IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:18-CR-0051 |
| v. | : | |
| DAVID WASHINGTON | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is Defendant's motion to suppress seeking exclusion of physical evidence. (Doc. 22.) For the reasons stated herein, the motion will be denied.

**I.   Background[1]**

On February 14, 2018, a federal grand jury returned a seven-count indictment charging Defendant David Washington with possession with intent to distribute cocaine base, heroin, n-ethylpentylone, dibutylone, fentanyl, and clonazepam in violation of 21 U.S.C. § 841 (Counts 1-4); felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 5); possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) and § 924(a) (Count 6); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 7). (Doc. 1.) Defendant entered a plea of not guilty to the charges on February 20, 2018. (Doc. 12.)

---

[1] Unless otherwise noted, the following factual account represents the facts the court credits upon the consideration of testimony and exhibits presented during the evidentiary hearing.

Defendant filed a motion to suppress physical evidence and a supporting brief wherein he moved to suppress all evidence seized on the basis that the police officers illegally entered and searched the apartment at issue without a warrant. (Docs. 22-23.) The Government filed a brief in opposition arguing that Defendant did not have a reasonable expectation of privacy in the apartment and, alternatively, that the entry into the apartment was reasonable. (Doc. 26.) The court subsequently held an evidentiary hearing on the motion.

At the suppression hearing, the sole witness, Officer Darrin Bates ("Officer Bates") from the Street Crimes Unit ("SCU") of the Harrisburg Police Department ("HPD"), was presented by the Government. Officer Bates testified that, at approximately 4:00 p.m. on August 7, 2017, he received a call from a confidential informant ("CI") stating that the CI was concerned for a woman named "Pretty," described as a young, light-skinned woman. The CI indicated that he/she had not seen Pretty for several days and believed she was being held against her will inside apartment 104 of the orange building located at 17th and Boas Streets in Harrisburg by men from the New York area. Based on the building description, Officer Bates researched the area and identified the building as 920 N. 17th Street. This building was managed by Skynet Properties, which had previously provided the HPD with a key to access the main doors of the building.

At 5:10 p.m., approximately one hour after the CI's initial call, HPD officers entered 920 N. 17th Street with the intention of contacting apartment 104 to locate Pretty. Officer Bates immediately smelled a strong odor of burnt marijuana as he entered the second floor through the hallway door. To verify that the odor emanated from apartment 104, Officer Bates walked down the hallway to ensure the smell was not coming from another apartment. As he walked away from apartment 104, the odor decreased; when he returned to apartment 104, he could smell the strong odor of burnt marijuana.

HPD officers knocked on the apartment door several times and announced their presence. They heard a television and voices inside the apartment, but no one answered the door. Officer Bates subsequently heard someone walk toward the door as if to look through the peep hole, then walk back to the rear of the apartment. Officers could then hear the television being turned down.

Officer Bates stepped outside of the building to contact his supervisor. Meanwhile, additional HPD officers, including Dauphin County Probation Officer Jesse Chianos and HPD Officer Anthony Fiore, remained outside of the door to apartment 104. Within minutes, Defendant and a woman later identified as Bonnie Rodgers ("Rodgers") opened the apartment door and walked out as if they were leaving the apartment. When asked by the HPD officers whether anyone else was inside the apartment, Defendant stated that his girlfriend was in the bathroom.

3

After being advised that the other HPD officers contacted the occupants of the apartment, Officer Bates returned to speak with Defendant and Rogers outside of apartment 104. With the door open, Defendant spoke to officers while smoking a cigarette. Based on his experience, Officer Bates believed Defendant was attempting to mask the marijuana odor emanating from the apartment. Officer Bates questioned Defendant regarding who owned or rented the apartment. Defendant indicated that the apartment's owner was his wife's step-daughter, Nakela Nash ("Nash"), who was not home, and asked if the officers were looking for someone. Officer Bates stated that he was looking for the apartment owner and asked again if anyone else was inside the apartment to which Defendant indicated that there were two individuals inside the apartment. Upon Officer Bates' request, Defendant went into the apartment, shut the door, and returned from the apartment with two women, later identified as Tanya Fox ("Fox") and Elizabeth Matters ("Matters"). Officer Bates immediately noticed that Fox was heavily intoxicated—she swayed, her eyes were glassy, and she appeared tired—likely from a controlled substance, as he could not detect the odor of alcohol on her.

Officer Bates again asked if anyone else was in the apartment, and Defendant responded that his girlfriend was in the bathroom. Because of Defendant's nervous demeanor and the circumstances, Officer Bates stepped inside the door so it could not be shut and asked Defendant to retrieve his girlfriend.

4

Defendant requested that "Pretty" come out of the bathroom, which she did. Pretty, later identified as Shakila Jackson ("Jackson"), matched the description from the CI of the woman being held against her will. Officer Bates requested that Defendant, Rogers, Fox, Matters, and Jackson sit down in the living room and provide identification. Officer Bates asked for a final time whether there was anyone else in the apartment. Defendant assured Officer Bates that no one else was present but that he could inspect the apartment if Defendant accompanied him.

While walking through the apartment, Officer Bates noticed the smell of burnt marijuana. He asked Defendant to contact the apartment's owner and Defendant complied. The woman on the phone identified herself as Nash and stated that she owned or rented the apartment and that her step-father, Defendant, lived there as well. Officer Bates notified Nash that he smelled marijuana and requested permission to search the apartment. Nash declined and requested that Officer Bates obtain a warrant. HPD secured the apartment while Officer Bates obtained a search warrant.

While waiting for the warrant, Rodgers consented to a search of her person and officers located crack cocaine and a pipe. Officers also found crack pipes on Matters and Pretty. Pretty indicated that she had been at the apartment for a few days with Defendant and that he provided her drugs in exchange for sexual encounters.

5

At 7:55 p.m., Officer Bates obtained a search warrant for the apartment. HPD executed the warrant at 8:05 p.m. and located a significant quantity of drug packaging materials, including stamped wax paper bags, blenders, gloves, masks, scales, sifters, and cutting agents. Officers also found over 28 grams of cocaine base, heroin, fentanyl, marijuana, and other drugs in addition to seven firearms, tasers, handcuffs, ammunition, and five cellular phones. The bedroom safe contained a wallet with identification documents for Defendant. On January 15, 2018, the Government obtained a separate search warrant for the five cellular phones, and data was subsequently extracted from each.

## II. Discussion

In his motion to suppress, Defendant argues that the physical evidence recovered from the apartment and the data recovered from the cellular phones was obtained in violation of his Fourth Amendment rights and must be suppressed. As an initial matter, the Government raises the issue of Defendant's standing to challenge the search. "A defendant must have standing to invoke the Fourth Amendment's exclusionary rule." *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011). Standing is established if a defendant had a reasonable expectation of privacy in the "invaded place." *United States v. Cortez-Dutrieville*, 743 F.3d 881, 883 (3d Cir. 2014) (citing *Correa*, 653 F.3d at 190). A person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in

the home that society is prepared to recognize as reasonable." *Id.* at 884 (quoting *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990)). In his brief, Defendant averred that HPD officers "went to the residence where [he] was staying." (Doc. 21, p. 1 of 8.) When questioned by Officer Bates, Defendant stated that he did not own or rent the apartment; rather Nash was the owner. However, Nash informed Officer Bates that while she owned or rented the apartment, Defendant also lived there. Additionally, during the search, officers located Defendant's identification documents in the bedroom safe. Accordingly, there are sufficient facts to establish that Defendant was at least an overnight guest in the apartment, providing him with a reasonable expectation of privacy in the residence.

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). The applicable burden of proof is "by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has repeatedly held that "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Generally for a seizure to be reasonable under the Fourth

Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356-57 (1967)). As the Government points out, Defendant does not contest the legality of the HPD's entry into the common hallway of the apartment building where officers smelled marijuana. (Doc. 26, p. 16 of 25.) Rather, Defendant avers that Officer Bates unlawfully seized the apartment when he entered without consent or a warrant and ordered all occupants into the living room. (Doc. 23, p. 3 of 8.)

Police officers need neither reasonable suspicion nor probable cause to knock on a door and initiate contact with occupants of a residence. *United States v. Charles*, 29 F. App'x 892, 897 (3d Cir. 2002) (citations omitted). Regardless, "the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (citing *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004)); *United States v. Ushery*, 400 F. App'x 674, 675-76 (3d Cir. 2010).

"Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365-66 (3d Cir. 2006) (citing *Steagald v. United States*, 451 U.S. 204, 211 (1981)) (citations omitted). Exigent circumstances can include hot pursuit of a

suspected felon, the possibility that evidence may be removed or destroyed, or danger to the lives of officers or others. *Id.* at 366 (citing *United States v. Richard*, 994 F.2d 244, 247-48 (5th Cir. 1993)). In exigent circumstances, "the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion." *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 288-89 (1967)). However, law enforcement violates the Fourth Amendment if it deliberately creates the exigent circumstances. *Id.* (*United States v. Acosta*, 965 F.3d 1248, 1254 (3d Cir. 1992)) (citations omitted).

In this case, Officer Bates, along with other HPD officers, entered the common hallway at 920 N. 17th Street to investigate the CI tip that Pretty was being held against her will inside apartment 104. Upon entering the common hallway with the intent to contact the occupants of apartment 104, Officer Bates smelled a strong odor of burnt marijuana. He verified the source of the odor and confirmed that the smell was emanating from apartment 104. The officers then proceeded to knock and announce their presence, which required neither reasonable suspicion nor probable cause. *See Charles*, 29 F. App'x at 897.

After several minutes of knocking and hearing someone walk back and forth in the apartment, Defendant and Rodgers opened the apartment door. Defendant proceeded to be evasive in responding to the officers' questions regarding the

presence of other individuals in the apartment. During this time, Defendant smoked a cigarette, which in Officer Bates' opinion, was to cover the scent of burnt marijuana. Then, when Matters eventually came to the door, she appeared heavily under the influence of a controlled substance. Upon Officer Bates' third try, Defendant finally stated that his girlfriend was in the bathroom. Based on the totality of the circumstances—*i.e.* the odor of burnt marijuana, Defendant's attempt to cover the scent by smoking a cigarette, Matters' intoxication, the lack of forthrightness from Defendant regarding other occupants of the apartment, and Defendant's evasive and nervous demeanor—Officer Bates believed it was necessary to step inside the apartment. Furthermore, at this point, Officer Bates had still not located Pretty. The odor of burnt marijuana provided Officer Bates probable cause for a search warrant, but the exigent circumstances created by Defendant, not HPD, permitted Officer Bates and the HPD to enter the apartment prior to obtaining a warrant. *See Coles*, 437 F.3d at 365-66. Therefore, the court finds that Defendant's Fourth Amendment rights were not violated and will deny his request to suppress the evidence seized from apartment 104.

## III. **Conclusion**

For the reasons stated herein, the court will deny Defendant's motion to suppress evidence. (Doc. 22.) An appropriate order follows.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: January 16, 2019